# CHARLESTON.

SEAMON *et al.* v. DYSON *et al.*

Submitted September 1, 1915.   Decided September 21, 1915.

CANCELLATION OF INSTRUMENTS—*Evidence—Procurement of Note and Deed.*

A case determinable from its facts, upon well established legal principles.

Appeal from Circuit Court, Ohio County.

Suit by Andrew D. Seamon and others against John S. Dyson and others.  From a decree for defendants, plaintiffs appeal.

*Affirmed.*

*McCamic & Clarke, C. E. Morris* and *J. B. Sommerville,* for appellants.

*Frank A. O'Brien* and *J. M. Ritz,* for appellees.

LYNCH, JUDGE:

Denied relief by a final decree upon pleadings and proof, based on a bill charging defendants Dyson and Statler with fraud in the procurement of a note for $10,000 dated December 17, 1907, payable to Dyson at one year with interest and secured by a deed of trust executed by A. D. Seamon and wife, averring want of consideration for the note, and praying cancellation of the note and deed and an injunction inhibiting enforcement of the lien by the sale then advertised, plaintiffs seek review by appeal.

In an original bill plaintiffs charge that A. D. Seamon invested large sums of money in "bucket shop" operations conducted by Statler and others in the city of Wheeling, whereby he lost the money so invested, to the extent of $25,000. To this bill a demurrer was sustained.  In an amended bill, whereon it is virtually conceded they now base their right to relief, plaintiffs attribute the loss of the same money to investments upon the result of speed trials upon the popular horse race courses in the east.  More fully amplified, the amended bill avers that, at the solicitation of Statler, and

upon his representation that through a friend in New York he had theretofore obtained and thereafter could obtain reliable information on which safely to place money in betting on the results of such speed tests, whereby he had received and he and Seamon could thereafter receive profitable returns without serious risk of loss, plaintiff A. D. Seamon, a man physically and mentally infirm by reason of his advanced years, relying on such representations, from time to time during the race seasons in 1905 and 1906 or in 1906 and 1907 for that purpose did advance various sums of money, aggregating at least the amount heretofore stated, all of which he lost by wagering through bets on races claimed by Statler to have been made for the joint benefit of himself and Seamon according to advice from the New York friend as to the horse scheduled to win in the next succeeding races. But in neither bill do plaintiffs charge, directly or indirectly, that Dyson in any manner participated in or had any knowledge of such transactions or investments. Nor do they therein charge against him any conduct affecting his integrity, or impute to him any dishonesty in his dealings with plaintiffs; but, as witnesses, they do say he denied knowing anything about their receipt of the money evidenced by the $10,000 transaction, and that he participated with Statler. in the fraudulent procurement of the note and deed of trust.

By their answers and testimony, defendants Dyson and Statler deny every averment of both bills and every fact sought to be established by plaintiffs' proof so far as it tends to show any taint of dishonest advantage on their part in the transactions under review independent of the gambling operations, as to which Seamon says he has no knowledge except that he gave money to Statler to wager or bet on the races, to which the latter responds that he placed Seamon's money and equal amounts of his own for the joint benefit of both and that their gains and losses were always the same.

While not attempting the useless and difficult task of giving an analytical exposition of the voluminous proof, we may now express the opinion and conviction, consequent upon a thorough examination of all such testimony, that it is wholly insufficient to warrant any decree other than that entered by the circuit court. Except on one particular later noted, Dyson

is wholly vindicated and absolved from any imputation of unfairness or dishonesty in the transactions from which plaintiffs claim to have suffered great pecuniary losses. Indeed, plaintiffs themselves acquit and exonerate him, save as noted. This exception properly may now be finally disposed of, and as to it the same conclusion is inevitable. That Dyson should state, as plaintiffs say he did, that he knew nothing about their receipt of the $10,000 or its equivalent at or about the date of the execution of the note therefor and of the deed of trust securing it, occurs to us to be wholly improbable, notwithstanding A. D. Seamon's constant reiteration of the truth of the statement accompanied by a repetition of his claim that he did not in fact receive any part of the money mentioned in the note, although he does not pretend to deny that he and his wife signed the note and deed and acknowledged the due execution of the latter. Mrs. Seamon was not present when the transaction was finally consummated, and hence did not know whether her husband did or not obtain the money or any part of it. However, not only did defendants Dyson and Frank O'Brien, as witnesses of the *factum* of the two papers, positively assert Seamon's actual receipt of the sum represented by the transaction, but other circumstances fully corroborate them. O'Brien, as counsel for Seamon examined the title to the property covered by the trust, and prepared the note and deed, at the instance and request of A. D. Seamon, who paid him for such services. Moreover, Seamon paid one year's interest upon the $10,000, and, being in arrears for the interest for the two years next ensuing, he gave Dyson an additional note therefor, wherein was included the amount then due for taxes on property owned by Seamon in the city of Wheeling and also a small sum advanced for his personal use. The payment of the second or interest note Seamon likewise secured by a second mortgage on property owned by him at Martin's Ferry, Ohio, Smith having the first mortgage thereon. Besides, when Smith brought foreclosure proceedings at the situs of the Ohio property, Seamon through his attorney and doubtless with his consent, though that he denies (impugning his counsel's loyalty), agreed to a judgment or decree fixing the second mortgage as a lien subject to the first, and at the foreclosure sale Dyson purchased the property for

his own protection. This purchase Seamon subsequently but unsuccessfully assailed upon ground not clearly disclosed by the record, but evidently not on grounds now alleged as vitiative of the $10,000 note and trust deed.

It is true Seamon did not receive in cash all of the $10,000 at the date of the execution of the note and trust; but he did get, as we conclude from the evidence, $6,000 in currency and a prior note for $4,000 executed by him to Dyson probably about December 17, 1906. According to the weight of the evidence, the $4,000 note, on which two years' interest at the rate of twelve per cent had been paid, was delivered to and accepted by Seamon together with the $6,000 in currency as and in full consideration of the note of December 17, 1907. This conclusion eliminates the charge made by plaintiffs of fraud and want of consideration, in so far as it seeks to impute to Dyson any unfairness or dishonesty in that transaction. Indeed, plaintiffs do not seriously insist upon any relief against Dyson based upon such fraud.

However, they do insist that, by reason of Statler's interest in the $4,000 and $10,000 notes, plaintiffs are entitled to credit thereon to that extent. This claim is predicated upon the fact, clearly established by the proof, that of the sum evidenced by the $4,000 and $10,000 notes Statler advanced to Dyson $2,000 as a portion of each note or a total of $4,000, for which sums Dyson executed to him his note in each instance, with an endorsement thereon explaining the purpose for which they were given; whereby, as plaintiffs claim, $4,000 of the $10,000 note was in fact due and payable to Statler, though he was not named a joint payee therein. That the first $2,000 advanced by Statler was not the result of any joint venture in gambling operations by Seamon and Statler sufficiently appears from the evidence of Statler and Peterson, both of whom agree in saying the money was procured upon a note by Statler discounted by the Dollar Savings Bank, of which Peterson was president. Plaintiffs rely chiefly upon a discrepancy in the evidence touching the source from which Statler obtained the second $2,000 advanced by him. That he did obtain a second loan for that amount from the same bank he and Peterson also testified. But the second note bears date ten days subsequent to the consummation of the trans-

action regarding the $10,000 note and the deed of trust securing it.* Nor was the second loan obtained by Statler upon a note signed by himself and wife, as they testified. On the contrary, the security was collateral. But, at the date of that loan, the proceeds of which he claims was paid to Dyson as part of the $10,000, Statler and Seamon, as admitted by both of them, were not, and for some time prior thereto had not been, engaged in any gambling transactions of any character. Such transactions had theretofore terminated; it is true not a long period, but the fact is, as the proof shows and as Seamon admits, they had then ceased all joint enterprises or ventures of any character. If so, then it is immaterial from what source Statler obtained the second $2,000 advanced by him to Dyson, provided of course he did not secure the money from a source traceable to the operations theretofore jointly conducted by the two, as to which there is no evidence. For, under §1, ch. 97, Code 1913, no "contract, conveyance or assurance of which the consideration or any part thereof is money, property or other thing won or bet at any game, sport, pastime or wager, or money lent or advanced at the time of any gaming or wagering to be used in being so bet or wagered shall be void, unless the person lending or advancing it knows that it is to be so used". That Dyson did not know the money loaned by him to Seamon was to be used in violation of the statute was, as already stated, sufficiently established by the proof. A. D. Seamon, in effect, repeatedly stated he had no information whatever that Dyson knew Seamon was wagering money for any purpose; and both Statler and Dyson say he did not know and had no reason to suspicion that Seamon was engaged in any unlawful transactions. Instead, as appears, they endeavored to prevent disclosure of their participation in these operations, and, to that end, Seamon invariably declined to accept a check for money paid to him for such purposes and insisted that it should be paid in currency, and the money was always so paid. Had the evidence introduced by plaintiff or defendants justified the conclusion that Statler obtained any of the money so advanced by him, through gambling transactions or operations conducted by him jointly with Seamon or was to be used in such unlawful porposes, gladly would we grant the relief

for which plaintiffs pray against Statler.  But there is no such evidence.  Without it, a decree would be wholly arbitrary, however much plaintiffs may possibly have been wronged.

These conclusions necessarily lead to an affirmance of the decree complained of; and that will be the order entered here.

*Affirmed.*